MARTIN v. WILSON.

(Circuit Court of Appeals, Seventh Circuit. February 3, 1903.)

No. 901.

1. JUDGMENTS—ASSIGNMENT—ACTION BY ASSIGNEE.

Under the laws of Kansas the assignment of a judgment carries with it the legal title, and the assignee of a judgment rendered in that state, and there assigned, may sue thereon in his own name in the courts of any other state or jurisdiction.

2. CORPORATIONS—SUIT TO ENFORCE STATUTORY LIABILITY OF STOCKHOLDER—CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.

Under the law of Kansas, as settled by the decisions of its supreme court, a judgment against a bank, adjudging it liable for an assessment as a stockholder in another bank, is conclusive upon its stockholders as to such liability, and a stockholder sued on such judgment in another jurisdiction to enforce his statutory liability cannot set up the want of power of the bank to become a subscriber to the stock of another corporation.

¶ 2. Effect of judgment against corporation in action to enforce stockholder's liability, see note to Bank v. Supplee, 52 C. C. A. 305.

**B. LIMITATIONS—ILLINOIS STATUTE—CAUSE OF ACTION ARISING IN ANOTHER STATE.**

The provision of the Illinois statute of limitations that when a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action cannot be maintained thereon by reason of the lapse of time, an action thereon shall not be maintained in Illinois, is not applicable to a case where an action is not barred by the statute of the state in which the cause of action arose because the defendant was a non-resident, and was not within the state, so that he could be there sued.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

The action was brought in the Circuit Court to enforce the double liability of a stockholder in a Kansas corporation. Upon demurrer to the declaration, the demurrer was sustained, and on refusal of plaintiff in error to amend or otherwise change the declaration, the case was dismissed. From this decree, sustaining the demurrer to the declaration, and dismissing the cause, this writ of error is prosecuted.

The further facts are stated in the opinion of the Court.

Geo. E. Miller and James M. Graham, for plaintiff in error.

John Lynch, Jr., for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the Court.

The plaintiff in error, plaintiff below, was a citizen of the State of Kansas, and the defendant in error, defendant below, a citizen of the State of Illinois. The declaration averred that the Exchange Bank of Kansas City, Kansas, at all the times referred to in the declaration, was a banking corporation organized under and by virtue of the laws of the State of Kansas, with a paid up capital of $51,000; that the defendant in error at all such times, was the owner of $10,000 of such capital stock; that said bank was not organized or created for religious, charitable or railroad purposes; that the First National Bank of Kansas City, Kansas, was a national banking corporation, organized under and by virtue of the general laws of Congress; that prior to the 21st day of February, 1891, the authorized capital stock of the First National Bank of Kansas City, Kansas, was $100,000; that on said date said National Bank was authorized by the Comptroller of the Currency, to increase its capital stock to $150,000; that the said Exchange Bank subscribed to said capital stock as increased, the sum of $27,800 and received in return therefor, shares of stock in said bank to the number of 278 of the par value of $27,800; that on the 16th day of July, 1891, the said First National Bank became insolvent, closed its doors, and suspended business; that on the 17th day of August, 1891, the Comptroller of the Currency appointed one Atkinson, as receiver, who duly qualified and continued to act as such receiver until the first day of June, 1898; that about the 28th day of April, 1893, the Comptroller of the Currency made an assessment and requisition upon the shareholders of said bank to the amount of eighty per cent. of the par value of its capital stock held and owned at the time of its suspension; that by said assess-

ment, the Exchange Bank was assessed and required to pay upon its stock, held in said bank, the sum of $22,240; that failing to pay such assessment, Atkinson, receiver, on the 7th day of October, 1893, filed his complaint in equity in the Circuit Court of the United States, for the District of Kansas, against the said Exchange Bank, and other stockholders in the First National Bank, to recover the amount of said assessments; that the said Exchange Bank waived issue and service of summons in said suit, entered its voluntary appearance, and stipulated that if no answer was made on or before rule day, the decree should be taken and entered by the Court at any time thereafter; that on December 1, 1894, a judgment was entered in said case against the said Exchange Bank, directing it to pay the receiver the sum of $22,240 with interest from the 28th day of April, 1893, within thirty days from the date of said judgment, and in default thereof an execution should issue; that said Exchange Bank failed to pay the amount of said judgment, or any part thereof, and on the 7th day of October, 1897, execution was issued on said judgment against said Exchange Bank, which was returned Oct. 27th, 1897, nulla bona; that on the 31st day of May, 1898, the said receiver being authorized so to do, sold and transferred said judgment to one Hobbs; that in making said purchase the said Hobbs was acting as agent and trustee of plaintiff in error, and paid for same with moneys that belonged to plaintiff in error; that on the 12th day of October, 1898, said judgment, in discharge of said trust, was transferred to said plaintiff in error, and that plaintiff in error is now owner of said judgment, and entitled to enforce the same; that said judgment is unpaid, unreversed, and in full force and effect against the said Exchange Bank, and all persons in privity with said bank, and who may be liable under the laws of the state of Kansas as stockholders in said bank; that at all times herein mentioned, defendant in error was, and now is, the owner of one hundred shares of the capital stock of said Exchange Bank, of the par value of $10,000; that section 2, art. 12 of the Constitution of Kansas reads as follows: "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, but such individual liability shall not apply to railroad corporations, nor corporations for religious or charitable purposes;" that the statutes of Kansas in force then and now, have the following provision: "If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and upon such motion, such Court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

'hese averments are followed in the declaration by averments re-
ıg to the construction of the statutes of Kansas by the Supreme
rt of that state, and the construction of the statutes of Kansas
rding the limitation of actions by the Supreme Court of that
, averring that during all the time when the statute of limitations
.is case might have been running, the defendant in error resided
linois; and that he has never been within the limits of the state
ansas, or the jurisdiction of the Courts of that state; wherefore
eclaration alleges the defendant in error is liable to the plaintiff
·or for the sum of $10,000 with interest, which sum has been de-
· ed and payment refused.

: three substantial propositions urged by counsel for appellee
ıt the sufficiency of the case thus stated against him are: (a)
the judgment was non-assignable at law, wherefore plaintiff in
· had no right of action at law in her own name; (b) That the
ınge Bank was without power to subscribe for the stock on
the liability against defendant in error is predicated; and (c)
he right of action is barred by limitation. These propositions
considered in the order named:

ᶦnder the laws of Kansas, the assignment of a judgment carries
the legal, as well as the equitable title. The plaintiff in error,
ıre, came into the Illinois courts, bringing with her legal title
ᶦudgment sued upon; for the nature of the title acquired through
nent is governed by the lex loci. True, had the assignment
ıade in Illinois, the action would not lie in the name of the
e, for she would have acquired an equitable title only; but
leₒₐₗₐₜle having been acquired under the Kansas laws, the inability
of the plaintiff in error to sue in her own name in the Courts of Il-
linois is removed.

II. Defendant in error relies perhaps, with more confidence upon
his second proposition, viz.: That the Exchange Bank was without
power to subscribe for the stock on which the liability against defend-
ant in error is predicated. But may defendant in error, in this ac-
tion, challenge such power?

The effect of the judgment of the Kansas court was, that the Ex-
change Bank was liable upon its subscription, and the assessment
thereon. This, so far as the bank is concerned, forecloses any fur-
ther question in a collateral jurisdiction, for full faith and credit must
be given by the federal courts sitting in Illinois, to the judgments
of the courts of Kansas. Not only is the Exchange Bank foreclosed,
but the judgment is an adjudication of all the questions involved,
against all persons who are, by the laws of Kansas bound by the judg-
ment.

What, then, is the relation of the defendant in error to the Kansas
judgment? He was, at the time the judgment was entered, a stock-
holder of the Exchange Bank, and as such, in the absence of fraud
or collusion, was represented by the corporation in the action in which
the judgment was entered. True it is still open to him to plead, even
in a suit upon the judgment in a collateral jurisdiction, that he was
not at the time a stockholder, or that the judgment had been paid
or discharged, or that it had been obtained by fraud or collusion.

But to the extent that the Kansas court has adjudged that the Exchange Bank is liable on the subscription, such adjudication binds defendant in error, as well as the Exchange Bank. Ball v. Reese, 58 Kan. 614, 50 Pac. 875, 62 Am. St. Rep. 638; Hancock Nat. Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619. In Hancock Nat. Bank v. Farnum, supra, it was held that the question how far a stockholder is bound by a judgment against the corporation, is one determinable by the law of the state where the judgment is entered, and not by the general law; and in Ball v. Reese, supra, it was held that under the laws of Kansas, such judgment as the one under review is, in the absence of fraud or collusion, conclusive against the stockholders, as well as the corporation, upon the question of the corporation's liability.

True, an attempt is made to distinguish these cases from the one under consideration. It is said that the judgment entered against the corporation in Hancock Nat. Bank v. Farnum, was upon a transaction contractual in its nature, and that the liability of the Exchange Bank, in the case under consideration, is not contractual. The argument is urged that because the Exchange Bank is said to be without power to subscribe, no contract could have arisen, and no question of contract could have been involved.

The distinction urged does not convince us. Either the subscription to the capital stock was a contract, or it was a void thing. There is in the transaction no element of tort, or of liability other than that of contract. Now the underlying questions in the Kansas case were, first: the fact whether the subscription had been made; and secondly, the power of the bank to subscribe. The one was a question of fact, the other of law, but both were essential to and involved in the judgment entered.

The Kansas judgment, in effect, ruled, both that the bank had entered into the subscription, and that it had power so to do. The corporation being a Kansas corporation, and its powers arising under Kansas law, this ruling is binding as we have seen, both upon the bank and the stockholder. It binds them to the full extent of all the questions involved. The faith and credit required by the constitution is full faith and credit. That constitutional mandate is not met if a collateral court takes the judgment to pieces—dissolves it into its original elements of law and fact—and respects only such pieces as meet with the approval of the collateral enquirer. Such faith and credit would be only partial faith and credit. Every question involved in the Kansas judgment, including the one of law relating to the power of the bank to subscribe, are now closed questions, so far as the bank and the defendant in error may inquire, unless the inquiry is lodged in the court where the judgment was entered.

III. It is insisted that the action was barred (1) by the Illinois statute providing that when a cause of action has arisen in a state or territory out of this state, or in a foreign country, and by the laws thereof an action thereon cannot be maintained, by reason of the lapse of time, an action thereon shall not be maintained in this state; and (2) by the Illinois statute that actions for damages for a statutory penalty, shall

be commenced within two years next, after the cause of action accrued.

Plainly the second statute does not apply, and the first one is also inapplicable, because under the laws of Kansas, the statute did not run in favor of Wilson during the time he was out of the state of Kansas. Hoggett v. Emerson, 8 Kan. 262; and the averment of the declaration is, that at the time the cause of action accrued, Wilson, was not, and since then never had been, within the limits of the jurisdiction of the courts of Kansas.

The declaration, in our judgment, stated a sufficient cause of action;. and the judgment of the Circuit Court sustaining the demurrer thereto was erroneous. The judgment of the Circuit Court will be reversed with instructions to overrule the demurrer, and proceed further in accordance with this opinion.